IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| DANIEL T. MACON, | 1:23-CV-00283-RAL |
| Plaintiff | RICHARD A. LANZILLO<br>Chief United States Magistrate Judge |
| vs. | |
| MRS.  GRESSEL, CRNP; DR. CAMACHO;<br>MRS.  MASON; AND MR. CARTER, | MEMORANDUM OPINION ON<br>DEFENDANTS' MOTIONS TO DISMISS<br>THE COMPLAINT |
| Defendants | ECF NOS. 19, 24 |

## I.    Introduction and Procedural History

Plaintiff Daniel T. Macon ("Macon"), an individual incarcerated at the State Correctional

Institution at Mahanoy("SCI-Mahanoy"), filed this *pro se* civil rights action pursuant to 42

U.S.C. § 1983 against four individuals who worked or provided medical services at the State

Correctional Institution at Forest where Macon was previously incarcerated.  The Defendants are

Security Captain Carter, Dr. Camacho, and Certified Registered Nurse Practitioners ("CRNP")

Gressel and Mason.  *See* ECF No. 5.  The Complaint asserts claims based on alleged violations

of Macon's rights under the Eighth and Fourteenth Amendments to the United States

Constitution and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132,

state law claims of medical malpractice, negligence, intentional infliction of emotional distress

("IIED"), and negligent infliction of emotional distress ("NIED").  *See id.*  These claims are

based on the mental health care Macon received at SCI-Forest and actions taken in response to

his request for the preservation of certain video footage.[1] *See id.* Macon seeks compensatory and punitive damages from each Defendant in their official and individual capacities. *See id.* at 2-3, 21.

Security Captain Carter responded to the Complaint by filing a motion to dismiss the claims against him pursuant to Fed. R. Civ. P. 12(b)(6). ECF Nos. 19 (motion), 20 (supporting brief). Thereafter, Gressel, Mason, and Camacho (collectively, "Medical Defendants") filed a motion to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(6). ECF Nos. 24 (motion), 25 (brief). Macon has submitted a brief in opposition to Carter's motion to dismiss (ECF No. 29) and a brief in opposition to Medical Defendants' motion to dismiss (ECF No. 37).[2] The matter is ripe for disposition.[3]

## II.    Material Facts

The Court accepts the factual allegations of the Complaint as true for purposes of the pending motions to dismiss.

During a routine cell check on February 9, 2021, Corrections Officer ("C/O") Dioquardi observed Macon in his cell with a noose fashioned from bedsheets. When Dioquardi asked Macon what he was doing, Macon responded that he was trying to kill himself. When Dioquardi asked why he was trying to kill himself, Macon responded that "they're trying to give me a celly

---

[1] Macon appended to his Complaint the following exhibits: 14 Inmate Request to Staff Member Forms (ECF No. 5 at 1, 5, 6, 13–15, 19, 21, 28, 35–39); documents pertaining to Misconduct Nos. D562604, B307294, B701335, B766864, D407955, D412814, D412833, D412400 (*id.* at 3, 41-44, 46-53); documents pertaining to Grievance Nos. 932079( *id.* at 40-54, 54), 919563 (*id.* at 29-34), and 917267 (*id.* at 2, 8–12, 16–18, 20, 22–25); and Confiscated Items Receipt No. B 894203 (*id.* at 7).

[2] Thereafter, the Medical Defendants re-filed their brief in support of the motion to dismiss as a "reply brief." *See* ECF No. 39.

[3] This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this action as authorized by 28 U.S.C. § 636.

(cell-mate)" and that he was very depressed and wanted to be alone.  Dioquardi called another prison official and a Psychological Services Associate ("PSA") to Macon's cell to speak with him. Additional officers arrived thereafter and escorted Macon to a "Psychiatric Observation Cell ('POC'), within the infirmary, for 24 hour suicide watch."  ECF No. 5, ¶ 1.

Dr. Gressel, who serves as a psychiatrist at the prison, and two other staff members met with Macon at 8:00 am the next morning.  According to Macon, Dr. Gressel first asked him, "did it really happen?" and, when he responded in the affirmative, Dr. Gressel asked why he tried to kill himself.  Macon "explained that depression, cell-mate issues, and the need to be alone and" receive "medication for depression" caused him to attempt self-harm.  *Id.* ¶ 2.  Dr. Gressel replied, "if you want a Z Code (single cell for either behavioral or mental issues) you would have to harm your cell-mate."  *Id.*  Dr. Gressel told Macon that he could not use his mental health to obtain a Z Code and "asked [Macon] if he was okay to go live in any housing unit."  *Id.*  Macon responded affirmatively and "again expressed treatment [sic] and the need to be alone."  *Id.*

Prison officials then returned Macon to his prior unit and paired him with a new cellmate.  Macon later "spoke with the Unit Manager about his stress and issues with cell-mates lately."  *Id.*  Thereafter, C/Os escorted Macon back to the POC for a "tele-med conference with Defendant Camacho."  *Id.*  At this appointment, Macon discussed his desire to be alone and receive medication to treat his depression.  When Dr. Camacho asked Macon about his current medication, Macon advised him that the DOC had "discontinued the medication."  *Id.*  Macon repeated his request for "treatment, medication and to be alone," but Dr. Camacho told him he would be returned to general population.  *Id.*  After Macon returned to his general population cell, he "stop[ped] speaking, eating and sleeping for two-days."  *Id.*

3

On February 12, 2021, Dioquardi asked Macon about his mental state and expressed her concern for his well-being.  The next day, while his cellmate slept, Macon attempted suicide with his cellmate's shaving razor.  Macon stopped when his cellmate woke up and asked him if he was okay.  Macon explained that his suicide attempt had failed and he would try again that night.  Later that day, Dioquardi asked him how he was feeling and about his POC appointment.  Macon replied that he did "not get[] any mental health treatment" and "was thinking about killing his cell-mate to be alone." *Id.* ¶ 4.  Thereafter, officers arrived to escort him to "the hole with a misconduct of threatening his cell-mate." *Id.*

SCI Forest Superintendent Oberlander met with Macon on February 19, 2021.  Macon told Oberlander about his February 13, 2021 suicide attempt, that he was not getting mental health help, and that he "just want[ed] to be alone." *Id.* ¶ 5.  "The Superintendent called medical, who took pictures, and Mr. Christensen, a mental health" staff member. *Id.* (cleaned up).  Macon spoke with Mr. Christensen about his depression and his desire to be left alone and, he had further discussions about his mental health with Oberlander and another prison official thereafter.  Oberlander then "told [Macon] he w[ould] be give[n] a temporary Z code" and" he would "work with mental health for depression." *Id.*

Oberlander ordered Macon to return to a POC, where he met with Defendant Mason, another psychiatrist, via a tele-med conference.  Macon relayed to Mason his desire for depression medication and to be alone, to which Mason allegedly responded, "I can't help you, and told the C/O to remove" Macon. *Id.*  Macon then showed Mason the razor scars on his arms and "stated he w[ould] kill his" next cellmate. *Id.*  Mason repeated that she could not help him and directed the C/Os to remove him.

"[W]ithin days" of this visit, Macon again met with Mason. *Id.* At this second appointment, Macon reiterated his "need for medication and even tried showing his cut wounds on his wrist." *Id.* Mason told Macon that he "did not need help, [Macon] started crying and became irate trying to plead for help, but" Mason again told officers to remove him. *Id.*

The Program Review Committee ("PRC") placed Macon in Administrative Custody ("AC") when they met with him on February 25, 2021. Macon alleges that after the meeting, Dr. Gressel advised him that he would not receive a Z code for mental health, that he repeatedly stated that he needed "help" and was "not faking," but Dr. Gressel told him help was not forthcoming. *See id.* ¶ 6. *Id.* Later, officers brought Macon to an observation cell in the RHU and a lieutenant told him he would soon receive a cellmate. No member of the mental health staff checked on Macon even though the PRC ordered a mental health visit within 72 hours. *Id.* The next day, February 26, Macon submitted a grievance complaining of the deficiencies in his mental health treatment. *Id.*

On March 2, 2021, Macon "wrote Security and asked for footage to be saved." *Id.* ¶ 7. He received a response stating, "Dr. Simons is looking into the matter." *Id.* On March 12, Macon received the response to his mental health grievance, in which he was told that "the footage requested in [sic] now not available." *Id.* ¶ 10. Four days later, Macon grieved Security's failure to save this video footage.

Prison officials assigned Macon to a new cell with a double bunk on March 10, 2021. Two days later, "[Macon] received an Informal Misconduct for not taking a cell-mate." *Id.* ¶ 9. The facility raised this misconduct to "a class 1." *Id.* ¶ 12. The hearing on this misconduct "was eventually postponed." *Id.* ¶ 13.

Macon's mental health started to deteriorate from his lack of treatment and the stress of

the grievance responses, lost camera footage, and misconduct. He began "sleeping less, missing

meals and showers, and not participating in yard or other outdoor recreations." *Id*. ¶ 14. He

additionally found his meetings with his Psychiatric Review Team ("PRT") "frustrating and

stressful." *Id*. ¶ 15.

For instance, at one PRT meeting, each time Macon attempted to answer Dr. Simon's

question about how he was feeling, Gressel cut him off to say: "all Macon want[s] is a Z Code,

he's good." *Id*. Gressel "order[ed him] to be removed from the meeting" after he began to argue

with her about her interruptions. *Id*. At another PRT meeting, after Macon told Dr. Simon how

depressed he was and requested medication, Gressel repeated that he only wanted a Z Code and

said, "you just don't get to bust in the door and ask for medication." *Id*. ¶ 16. Macon then

detailed his two suicide attempts. Gressel responded that to get medication he had "to go

through Mr. Cowen," "complete a composition book," and "talk with him." *Id*. Macon replied

that he had been trying to complete this process since 2019 but after the PSA on his unit left, he

did not hear from mental health staff until he reached out again in January 2021. Gressel told

Macon he would "have to do it all over again" and "you're faking so you don't need

help." *Id*. Macon "became irate and emotional" and again "was ordered to be removed from the

meeting." *Id.*

In early March, the RHU officers told Macon he was getting a cellmate whom they

"d[idn't] like" and to "take out [his] anger on him" if he did not want another cellmate. *Id*. ¶

17. After his cellmate arrived, Macon assaulted him because he "did not want to upset the RHU

officers or get another misconduct" for refusing to take a cellmate. *Id*. He had a misconduct

hearing on March 19, 24, and 25, during which he discussed his depression and the PRC's failure

to abide by Oberlander's promise of a sixty-day Z Code status.  After speaking with "all parties," the Hearing Examiner sanctioned him to Disciplinary Custody ("DC") in the RHU "for refusing to take a cell-mate and fighting a cell-mate." *Id.*

Macon dealt "with all these problems without medical treatment or coping skills," which exacerbated his depression and "sent [him] into a suicidal mind state." *Id.* ¶ 18.  Macon "tr[ied] to kill himself" "every night" with a noose fashioned from his bed sheet and "would perform each asphyxiation with intensity after every specific problem, i.e., misconduct hearings and PRT meeting." *Id.*

In mid-April, Macon "stop[ped] Mr. Cowan and begged for treatment" for the "bad dizzy spells" he had developed "from all the self-asphyxiation." *Id.* ¶ 19 (cleaned up).  He also told Cowan that he was unable to "take it" and "live with himself anymore and need[ed] help." *Id.*  Macon additionally "notif[ied] Medical" and they said to follow-up if the spells got worse.

"Days later," on April 21, Macon met with Gressel at his cell-door.  Gressel stated that she had prescribed him medication that "should help" and handed the medication to him. *Id.* ¶ 20.  Macon "took the medication and did not feel any better. [He] was paranoid, delusional, depressed, and very emotional with irrational behavior." *Id.* ¶ 21.  Around this time, he "filed a grievance explaining how he would no longer be the RHU officers [sic] hitman, and how he would kill the next cell-mate he received." *Id.*  The facility issued him a Z Code and placed him in the RHU for a year because of "his mental illness and not wanting to continue being the RHU officers [sic] pawn." *Id.*

On August 3, 2021, Macon "met with other mental health personnel" and got his medication adjusted. *Id.* This prescription "continues to be re-adjusted with additional meds." *Id.*

## III.   Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

While detailed factual allegations are not required to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true

all of the allegations contained in a complaint is inapplicable to legal conclusions."). Put another way, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as true, it is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

Finally, because Macon is proceeding *pro se*, the complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read his *pro se* SAC to state a valid claim upon which relief could be granted, it must do so despite his failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969).

## IV. Plaintiff's Legal Claims

The Complaint asserts the following claims:

- Eighth Amendment claims for cruel and unusual punishment, unnecessary and wanton pain, cruel and unusual use of isolation, deliberate indifference to serious medical needs (mental health), and inadequate prison medical care;

- an ADA Title II claim;[4]

- a Fourteenth Amendment claim for "Denial of Access to the Court by Malicious Intent (Interred) Spoliation";

- and state tort law claims of medical malpractice, negligence, IIED, and NIED.

ECF No. 5, p. 4.

---

[4] Macon asserts a general violation of the ADA. However, Title I prohibits discrimination in employment, 42 U.S.C.A. § 12112(a), and the DOC does not fall within Title III's definition of "public accommodation," 42 U.S.C.A. § 12181(7). *See Snider v. Pennsylvania DOC*, 505 F. Supp. 3d 360, 398 (M.D. Pa. 2020); *id.*, 398 n.156 (listing cases). Thus, only Title II may apply to this action.

The Complaint does not specify which claim(s) is asserted against which Defendant(s). However, Macon stipulates in his brief in opposition to Carter's motion that the claims against Carter arise solely from his alleged involvement with the unretained video footage, *see* ECF No. 29, and his brief in opposition to Medical Defendants' motion does not address the Fourteenth Amendment claim, *see* ECF No. 37, at 8.  As such, the Court will treat the Complaint as asserting the Eighth Amendment, ADA, medical malpractice and negligence claims against the Medical Defendants; the Fourteenth Amendment claim against Carter; and the NIED and IIED claims against all Defendants.[5]

## V.  Discussion

The Medical Defendants raise two arguments in support of their motion to dismiss the Complaint: (1) the Section 1983 claims are barred by the applicable statute of limitations; and (2) the facts alleged are insufficient to state a claim under the Eighth and Fourteenth Amendments, ADA, and Pennsylvania tort law.  Carter raises five arguments in support of his motion to dismiss the Complaint: (1) the Eleventh Amendment prohibits Macon's claims against him in his official capacity; (2) the Section 1983 claims are barred by the applicable statute of limitations; (3) the Section 1983 claims fail for lack of personal involvement; (4) the Complaint fails to state an access-to-courts claim; and (5) the state law claims are barred by sovereign immunity.

Macon concedes that his Section 1983 claims against Carter in his official capacity for monetary relief are barred by the Eleventh Amendment. *See* ECF No. 29, p. 4.  These claims are therefore dismissed with prejudice.  The Court will address the parties' remaining arguments in turn.

### A.  Whether Macon's claims are time-barred cannot be determined on the face of the Complaint.

---

[5] Furthermore, no plausible basis exists from the Complaint to infer Carter's involvement with Macon's medical care and conditions of confinement.

Pennsylvania's two-year statute of limitations for personal injury actions applies to

Macon's constitutional and state law claims. *See Wilson v. Garcia*, 471 U.S. 261, 266-67

(1985); *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 457 n.9 (3d Cir. 1996) (citing

42 Pa. C.S. § 5524). Federal law determines the date of accrual of a claim and, thus, when the

statute of limitations period begins to run. *See Montanez v. Sec'y Pennsylvania Dep't of Corr.*,

773 F.3d 472, 480 (3d Cir. 2014). A § 1983 claim accrues "when the plaintiff has 'a complete

and present cause of action,'" or in other words, "when the wrongful act or omission results in

damages." *Dique v. New Jersey State Police*, 603 F.3d 181, 185–86 (3d Cir. 2010) (quoting

*Wallace v. Kato*, 549 U.S. 384, 388 (2007)). "The determination of the time at which a claim

accrues is an objective inquiry" concerned with "what a reasonable person should have known."

*Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Pennsylvania's discovery rule will toll the

statute of limitation on a § 1983 claim until "the plaintiff knows, or reasonably should know, (1)

that [the plaintiff] has been injured, and (2) that [his or her] injury has been caused by another

party's conduct." *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991) (quoting *Cathcart v. Keene

Indus. Insulation*, 324 Pa. Super. Ct. 123, 471 A.2d 493 (Pa. Super. Ct. 1984)). But "[a]

plaintiff's ignorance regarding the full extent of his injury is irrelevant to the discovery rule's

application, so long as the plaintiff discovers or should have discovered that he was injured."

*Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015).

Under the prison mailbox rule, the Court treats the filing of Macon's Complaint as

September 29, 2023, the day he signed his pleading.[6] ECF No. 5, p. 27. Absent tolling, the

---

[6] Pennsylvania applies the prison mailbox rule, which provides that the "date of delivery of [the pleading] by the [inmate] to the proper prison authority or to a prison mailbox is considered the date of filing of the [pleading]." *Galtoghab v. Doe*, 2016 WL 757739, at *3 (W.D. Pa. 2016) (quoting *Commonwealth v. Little*, 716 A.2d 1287 (Pa. Super. Ct. 1998)).

statute of limitations thus bars Macon's claims that accrued earlier than September 29, 2021, two years before he signed the Complaint. The Medical Defendants argue this bar extends to every claim asserted against them because these claims "accrued between February 9 and August 3, 2021, when their involvement in [Macon's] care allegedly occurred." ECF No. 25, at 5. Carter avers that the claims against him accrued "on February 19, 2021, the date he informed Superintendent Oberlander the cuts [sic] on his wrists, as well as the relevant date from which [Macon] requested video evidence in Grievance #919563," which spanned from March 16 to July 30, 2021. ECF No. 20 at 11.

### 1. The constitutional and state law claims accrued between February and August 2021.

Federal law determines the date of accrual of a claim and, thus, when the statute of limitations period begins to run. *See Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014). A federal claim accrues "when the plaintiff has 'a complete and present cause of action,'" or in other words, "when the wrongful act or omission results in damages." *Dique v. New Jersey State Police*, 603 F.3d 181, 185–86 (3d Cir. 2010) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Likewise, a claim under Pennsylvania law accrues at "the occurrence of the final significant event necessary to make the claim suable." *Mack Trucks, Inc. v. Bendix–Westinghouse Automotive Air Brake Co.,* 372 F.2d 18, 20 (3d Cir.1966). Pennsylvania's discovery rule also applies to Macon's § 1983 claim and tolls the statute of limitations until "the plaintiff knows, or reasonably should know, (1) that [the plaintiff] has been injured, and (2) that [his or her] injury has been caused by another party's conduct." *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991) (quoting *Cathcart v. Keene Indus. Insulation*, 324 Pa. Super. Ct. 123, 471 A.2d 493 (Pa. Super. Ct. 1984)). *See also Montanez*, 773 F.3d at 480 (quoting *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009)) ("Under federal law, a cause of action

accrues 'when the plaintiff knew or should have known of the injury upon which the action is based.'") (further internal citation omitted). But "[a] plaintiff's ignorance regarding the full extent of his injury is irrelevant to the discovery rule's application, so long as the plaintiff discovers or should have discovered that he was injured." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015).

"A claim alleging deliberate indifference to serious medical needs accrues when the plaintiff knows or has reason to know that deliberate indifference is displayed." *Matos-Ramirez v. Northampton Cnty. Jail Med. Expert*, 2021 WL 3722262, at *4 (E.D. Pa. Aug. 23, 2021) (citing *Smith v. Municipality of Lycoming Cty.*, 335 Fed. Appx. 147, 149 (3d Cir. 2009) (per curiam) (prisoner alleging deliberate indifference to medical needs "knew, or had reason to know, of his alleged mistreatment when it occurred"). *See Green v. Philadelphia Cty. Prisons*, 2006 WL 2869527, at *6 (E.D. Pa. Oct. 4, 2006) (plaintiff's injuries and his § 1983 Eighth Amendment cause of action accrued when the defendants "displayed deliberate indifference to his medical needs" because "on those days [plaintiff] should have known he was injured under the Eighth Amendment"). Stated differently, "[a] deliberate indifference claim will ... accrue, and the statute of limitations for that claim will begin to run, when Plaintiff became aware of the fact that he wasn't receiving appropriate treatment." *Campbell v. Doe*, 2017 WL 349289, at *3 (D.N.J. Jan. 24, 2017) (citing *Hughes v. Kniebhlher*, 341 Fed. Appx. 749, 751-52 (3d Cir. 2009); *Baker v. Barnes*, 2012 WL 95363, at *4 (D.N.J. Jan. 12, 2012)). However, "the exact timing of any delay in providing medical treatment may not present a bright line of demarcation" for purposes of the statute of limitations. *Houser v. Folino*, 2014 WL 3696130, at *24 (W.D. Pa. July 23, 2014) (adopting Report and Recommendation). Ultimately, "the determination of the

time at which a claim accrues is an objective inquiry" concerned with "what a reasonable person should have known." *Kach*, 589 F.3d at 634.

Macon's constitutional and state law claims arise from his mental health needs between February 9 and August 3, 2021 and video footage he asked Security to preserve on March 2, 2021. The allegations related to the Medical Defendants' conduct concern Macon's tele-med appointment with Dr. Camacho on February 10, tele-med appointments with CRNP Mason on February 19 and an unidentified date "days" later, interactions with Gressel on February 10 and 25 and April 21, 2021, and Macon's inability to obtain proper medication until on or shortly after August 3, 2021. Reading the Complaint liberally, Macon's claims based on his mental health care and treatment accrued no later than August 3, 2021. As to the video, Macon contends that he learned that the video footage was gone on March 12, 2021. Thus, the claims based on prison personnel's failure to retain this footage accrued no later than that date. The claims asserted in the Complaint are therefore time-barred absent equitable tolling.

### 2. Whether the claims are saved by equitable tolling cannot be determined based on the current record.

Under the federal Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, a prisoner is required to exhaust available prison administrative remedies before commencing a lawsuit asserting claims based on his or her conditions of confinement. While the prisoner exhausts such administrative remedies, the statute of limitations is tolled. *Wisniewski v. Fischer*, 857 F.3d 152, 158 (3d Cir. 2017). *See also Carter v. Pennsylvania Dept. of Corrections*, 2008 WL 5250433, at *11 (E.D. Pa. Dec. 17, 2008) ("[T]he statute of limitations begins to run only when [a] plaintiff has exhausted his administrative remedies under the PLRA."). A plaintiff is not deemed to have exhausted his administrative remedies until a final appeal decision on his grievance. *See Fennell*

*v. Cambria Cty. Prison*, 607 Fed. Appx. 145, 149 (3d Cir. 2015) ("proper exhaustion" means a prisoner's completion of the administrative review process).

In his Complaint, Macon avers that he complained of his mental health care and treatment in a grievance he filed on February 26, 2021 and the missing video footage in a grievance he filed on March 16, 2021. He adds that after he began taking the medication Gressel prescribed him on April 21, 2021, he became "paranoid, delusional, depressed, and very emotional with irrational behavior" and "filed a grievance explaining how he would no longer be the RHU officers hitman, and . . . would kill the next cell-mate he received." ECF No. 5, ¶ 21.

Macon appended to his Complaint what appears to be the complete record of his February 26 grievance (Grievance No. 917267). *See* ECF No. 51, pp. 2, 8–12, 16–18, 20, 22–25. This Grievance complains about Macon's February 2021 interactions with the Medical Defendants and includes a request for the preservation of related video footage. Macon did not exhaust this Grievance until November 5, 2021. *See* ECF No. 37. As such, the claims against Dr. Camacho and Mason are sufficiently tolled, as well as the claims against Gressel that arise from her February 2021 interactions with Macon, for purposes of the motion to dismiss. The Court cannot, however, determine from the face of the Complaint whether the claims arising from Gressel's subsequent conduct has been tolled. The Complaint indicates that Macon filed at least one other grievance about his mental health issues. Meanwhile, Medical Defendants do not discuss equitable tolling in their motion to dismiss. Accordingly, the face of the Complaint does not permit dismissal of any of Macon's claims against the Medical Defendants based on the statute of limitations. This holding, however, does not preclude Defendants from raising their statute of limitations affirmative defense at a later stage of this case based on a more complete record.

Macon also appended what appears to be the complete record of the grievance pertaining to his video footage claims, Grievance No. 919563. *See* ECF No. 5-1, pp. 29-34. Carter argues that this record "indicate[s] that [Macon] exhausted his administrative remedies with respect to his request for video" on July 30, 2021, and thus, the two-year limitations period expired on July 30, 2023. ECF No. 19, at 11. The grievance record reflects that the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") dismissed Macon's final appeal on July 26, 2021. However, SOIGA's Final Appeal Decision contains a delivery date stamp of August 3, 2021. He therefore did not exhaust his administrative remedies for this claim until August 3. His claim nevertheless appears time-barred. However, Macon retorts that he actually did not receive SOIGA's response until December 20, 2021, which, if true, would toll his video footage claims until after he signed his Complaint. *See* ECF No. 29, p. 4. *See also* ECF No. 29-1. Because the Court cannot identify the date Macon exhausted Grievance No. 919563 from the face of the Complaint, the Court cannot dismiss the video footage claims based on the statute of limitations at this stage in the proceedings.

> ### B. The claims against Carter will be dismissed for lack of personal involvement.

Carter argues that the Complaint fails to demonstrate his personal involvement in the conduct that forms the basis of Macon's § 1983 claims. The Court agrees.

To prevail on any claim pursuant to 42 U.S.C. § 1983, a plaintiff must prove that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the Constitution or laws of the United States. *See Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995); *Est. of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005). From these elements, it follows that a defendant faces liability under § 1983 only if he had "personal involvement" in the deprivation of the plaintiff's constitutional right. *See Gould v. Wetzel*, 2013

16

WL 5697866, at *2 (3d Cir. Oct. 21, 2013). Where, like here, a Defendant is a supervisory official, the issue of "personal involvement" typically arises when the official is sued based on misconduct committed by a subordinate. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). In that context, a defendant's liability "cannot be predicated solely on the operation of respondeat superior." *Id.* (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Instead, the plaintiff must show that each defendant played an "affirmative part" in the complained-of misconduct. *Id.* This can be shown by alleging facts to support that the defendant "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity" in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Rode*, 845 F.2d at 1207–08. *See also Evancho*, 423 F.3d at 354.

In this case, the Complaint does not attribute any conduct to Security Captain Carter or mention him by name or title. Nor does the Complaint plead any connection between Macon's conditions of confinement or mental health care and Carter. Macon's alleged interactions with "Security" do not alone implicate Carter. ECF No. 5. And the Complaint and allegations set forth in the attachments do not suggest that Carter assisted with or directed others to deny Macon's request to preserve video footage—the crux of Macon's constitutional claim against him. Thus, the record fails to establish Carter's personal involvement in Macon's alleged constitutional injuries. *See e.g.*, *Davis v. Williams*, 354 Fed. Appx. 603, 605 (3d Cir. 2009) (granting motion to dismiss was proper where Defendant was not mentioned "in [Plaintiff's]

complaint or amended complaint, and [] there [wa]s no allegation even suggesting that [Defendant FCM] violated Davis's rights.").

Macon responds that "Carter is culpable for actions or inactions in training, supervision or control of subordinates" because he "acquiesced . . . in his subordinates [sic] wrongful act." ECF No. 29 at 5. To support his position, Macon relies upon Carter's reason for denying Grievance No. 919563, to wit: that Lt. Diemer appropriately replied to Macon's written request for preservation of video footage when he represented that Dr. Simons "was looking into it." ECF No. 5, ¶ 7. Even though Macon did not raise these factual allegations in his Complaint, the Court will address them in light of his pro se status. *See Sproul v. Walmart, 2023 WL 2895644*, at *1 (W.D. Pa. Apr. 11, 2023) (citing *Bush v. City of Philadelphia*, 367 F. Supp. 2d 722, 725 (E.D. Pa. 2005). *See also Bos. v. Prime Care Med., Inc.*, 2018 WL 3032853, at *5 n.6 (E.D. Pa. June 18, 2018) ("Boston may not assert new claims or rely on new facts in response to a motion to dismiss.").

Macon's additional assertions are unavailing for several reasons. First, because an individual's liability under § 1983 cannot be premised on a theory of respondeat superior, Carter cannot be liable for violating Macon's constitutional rights merely because of his subordinate's alleged unconstitutional conduct. Second, Carter's denial of his grievance, without more, does not establish his personal involvement in the underlying misconduct. *See Hayes v. Gilmore*, 802 Fed. Appx. 84, 87 (3d Cir. 2020) (citing *Rode*, 845 F.2d at 1207); *Mincy v. Chmielsewski*, 508 Fed. Appx. 99, 104 (3d Cir. 2013) ("[a]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."). Indeed, it is "well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct." *Mearin v.*

18

*Swartz*, 951 F. Supp. 2d 776, 781-82 (W.D. Pa. 2013). *See also Stevens v. Winger*, 2021 WL 2075585, at *4 (W.D. Pa. May 24, 2021) (dismissing claims against prison health care administrator whose only awareness of the alleged misconduct was based on receipt of a grievance); *Brown v. Nicholson*, 2020 WL 610523, at *6 (E.D. Pa. Feb. 7, 2020) (dismissing claim against prison CHCA who "denied [plaintiff's] grievance [and] stat[ed] that he had received appropriate medical attention for his reported complaint"); *Rogers v. United States*, 696 F. Supp. 2d 472, 488 (W.D. Pa. 2010) ("If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official."). Lastly, Macon does not have a "freestanding claim based on the denial of his grievances." *Hayes*, 802 Fed. Appx. at 87-8 (citing *Burnside v. Moser*, 138 Fed. Appx. 414, 416 (3d Cir. 2005) ("Inmates do not have a constitutionally protected right to the prison grievance process.") (citation omitted)). As such, Macon has failed to allege that Carter caused or contributed to the denial of his constitutional rights. Accordingly, the constitutional claims against Carter are dismissed.

### C.  The facts alleged are insufficient to state an Eighth Amendment claim.

Macon appears to contend that the treatment he received from Medical Defendants and his related conditions of confinement violated his Eighth Amendment right to be free from cruel and unusual punishment.[7]  Medical Defendants argue that the Complaint fails to state a viable cause of action under either theory of liability.  The Court agrees.

### 1.  Macon has failed to allege facts to support the Medical Defendants' deliberate indifference to his serious medical needs.

---

[7] The Complaint provides no plausible basis to assert an Eighth Amendment claim against Carter.

Macon contends that the Medical Defendants provided him inadequate medical care and acted with deliberate indifference to his serious mental health needs in violation of the Eighth Amendment.  "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *See Estelle v. Gamble*, 429 U.S. 97 (1976)) (internal quotation omitted).  To establish a violation of his constitutional right to adequate medical care, Macon must allege facts that demonstrate: (1) he had a serious medical need, and (2) acts or omissions by prison officials that reflect deliberate indifference to that need. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need exists when a "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991). Deliberate indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *see Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

The Complaint's allegations concerning the nature and severity of Macon's mental health satisfy the "serious medical need" element of his Eighth Amendment claim at this early stage in the proceedings.  Accordingly, only the second prong of the deliberate indifference test is at issue here–whether the treatment of Macon's mental health manifested a deliberate indifference to his serious medical need.

It is well-settled that "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases).  Such complaints fail as

20

constitutional claims because "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")). "Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983." *Tillery*, 2018 WL 3521212, at *5 (citing *Gause v. Diguglielmo*, 339 Fed. Appx. 132 (3d Cir. 2009) (characterizing a dispute over pain medication as the type of "disagreement over the exact contours of [plaintiff's] medical treatment" that does not violate the constitution)).

Similarly, "the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation." *Id.* (quoting *Estelle*, 429 U.S. at 106). "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). The Third Circuit has further instructed that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'" *Wisniewski v. Frommer*, 751 Fed. Appx. 192, 195-96 (3d Cir. Oct. 3, 2018) (quoting *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017)). Thus, "courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." *Hensley v. Collins*, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018) (quoting *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)).

Here, Macon contends that Dr. Camacho, Mason, and Gressel's conduct manifested deliberate indifferent to his serious mental health needs. Medical Defendants argue that Macon's "factual allegations show a dispute as to the adequacy of, rather than a complete denial or intentional delay of mental health care." ECF No. 25, p. 7. They are correct.

The Complaint is replete with evidence of Macon's continuous and robust mental health care and treatment. The allegations reference Macon's meetings with a PSA on February 9, Defendant CRNP Gressel and two other staff members in the morning and Defendant Dr. Camacho in the afternoon of February 10, mental health provider Mr. Christen first and Defendant CRNP Mason second on February 19, Mason again "days" later, Gressel on February 25 and April 21, medical provider Mr. Cowan in mid-April, and "other mental health personnel" on August 3 after Macon previously spoke with "several different mental health personnel outside of Defendant Gressel or Mr. Cowan." ECF No. 5, ¶¶ 5, 21. The Complaint also describes two meetings Macon had with his PRT and indicates that he consistently met with his PRT during the relative time. Macon additionally mentions being placed in the POC once for a 24-hour suicide watch and being escorted to the POC on several other occasions. Furthermore, according to the Complaint, Gressel prescribed Macon medication on April 21, 2021, this medication was adjusted and supplemented in August 2021, and he received a Z Code sometime between April and August. The Complaint also makes clear that each time Macon communicated his mental health struggles to a prison official, he received prompt attention from administrators and mental health staff. These allegations belie Macon's assertion that he did not receive any mental health treatment between February and August of 2021.

Macon charges the Medical Defendants with deliberate indifference because of their alleged disbelief of his suicidality and refusal to grant his request for medication to treat his

depression and a Z Code.  However, Macon does not plead that their treatment decisions fell

below a professional standard of care.  *See Hayes*, 802 Fed. Appx. at 88 (citing *Pearson*, 850

F.3d at 535 ("[W]e presume that the treatment of a prisoner is proper absent [an allegation] that it

violates professional standards of care.") (citation omitted)).  Nor does the Complaint indicate

that any of the other medical providers or prison officials that met with Macon in early 2021

recommended that he receive medication or a single cell.

He also claims that the medication Gressel prescribed him did not alleviate his mental

health issues and may even have worsened them.  "These allegations do not amount to

recklessness or deliberate indifference but rather, at most, possible negligence, which is

insufficient for an Eighth Amendment violation."  *Id.* (citing *Whitley v. Albers*, 475 U.S. 312,

319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that

characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that

conduct occurs in connection with establishing conditions of confinement, supplying medical

needs, or restoring official control over a tumultuous cellblock.")).  Lastly, Macon fails to plead

that any Medical Defendant had the authority and responsibility to issue him a Z Code.

Accordingly, while many of Dr. Camacho, Mason, and Gressel's alleged comments to Macon

are unsettling, the facts do not demonstrate that their medical care constituted deliberate

indifference.  *See,* e.g., *Baez v. Falor*, 2012 WL 4356768, at *40 (W.D. Pa. Sept. 24, 2012),

("Defendants' laughter and inappropriate comments . . . alone, while rude and insensitive if true,

does not establish that Defendants were deliberately indifferent to Plaintiff's medical needs,

particularly in light of the fact that Plaintiff was consistently provided with medical care and

treatment."), *aff'd*, 566 Fed. Appx. 155 (3d Cir. 2014) (listing cases);  *See Potter v. Deputy*

*Attorney Generals,* 304 Fed. Appx. 24, 27 (3d Cir.2008) (holding that district court properly

dismissed claim that officer mocked inmate while he suffered from an eye infection because verbal abuse of a prisoner by a prison official is insufficient to establish a violation of a federal right); *Owens v. Cuyler*, 1989 U.S. Dist. LEXIS 8071, at *12, 1989 WL 79737 (E.D.Pa. July 14, 1989) (finding no deliberate indifference when doctor laughed while inmate showed him his medical problems).

It is apparent that Macon took issue with the mental health treatment he received from Dr. Camacho, Gressel, and Mason. But his "disagreement with prison personnel over the exercise of medical judgment does not state a claim for relief." *Young v. Quinlan*, 960 F.2d 351, 358 n.18 (3d Cir. 1992). *See Payo*, 2022 WL 912588, at *8 ("Without more, however, his disagreement does not support an Eighth Amendment claim or demonstrate deliberate indifference to his serious medical needs."). Indeed, Courts have routinely found that regular assessment, treatment, and care like that provided in this case do not support a finding of deliberate indifference under the Eighth Amendment. *See, e.g.*, *Payo v. Stechschulte*, 2022 WL 912588, at *7 (W.D. Pa. Mar. 29, 2022) (No deliberate indifference found where it was undisputed that "Plaintiff was seen, evaluated and treated on a regular basis and was prescribed medication as medically needed."); *Gause*, 339 Fed. Appx. at 135 (Deliberate indifference standard unmet where "[Plaintiff's] medical records show that he was seen many times by the prison medical staff and received medicine, physical therapy, and even treatment outside of the prison," thus establishing that "[Plaintiff] received medical care."). Macon has therefore failed to state an Eighth Amendment deliberate indifference claim against the Medical Defendants.

    **2.  The Complaint fails to assert a viable conditions of confinement claim.**

Macon may also be asserting a conditions of confinement claim based upon his "isolation." ECF No. 5, p. 4 ("Cruel and Unusual Use of Isolation"). The Eighth Amendment's prohibition of cruel and unusual punishment imposes constitutional limitations on a prisoner's conditions of confinement. *See Rhondes v. Chapman*, 452 U.S. 337 (1981); *Graham v. Connor*, 490 U.S. 386 (1989); *Wilson V. Seiter*, 501 U.S. 294 (1991). "[A] prison official violates the Eighth Amendment only when two requirements are met." *Giblom v. Gillipsie*, 435 Fed. Appx. 165, 168 (3d Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). First, the plaintiff must allege a deprivation that is "objectively, sufficiently serious." *Beers-Capitol,* 256 F.3d at 125 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (quotation marks and citations omitted). The objective component is narrowly defined: only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Second, the plaintiff must show that the prison official "subjectively acted with a sufficiently culpable state of mind, i.e., deliberate indifference." *Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 418 (3d Cir. 2000). "This subjective component is also narrowly construed." *Henry v. Overmyer*, 2013 WL 3177746, at *2 (W.D. Pa. June 24, 2013). A prison official's conduct violates the Eighth Amendment "only if he knows that the inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* (quoting *Farmer*, 511 U.S. at 847) (alterations in original).

The Complaint's references to Macon's placement in the RHU and POC do not per se constitute unconstitutional conditions of confinement. Macon does not elaborate upon the conditions he experienced or imply that any deprived him of a human need. *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)) (A prisoner must show that the condition, either alone or in combination with other conditions, deprived him

of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human

need."). Macon has therefore failed to allege a viable Eighth Amendment claim arising from the

conditions of his confinement.

### D. The facts alleged are insufficient to state an ADA claim.

Macon claims that Defendants violated his rights under the ADA. The Court construes

this claim as asserted under Title II of the ADA. Section 12132 of Title II provides, "[n]o

qualified individual with a disability shall, by reason of such disability, be excluded from

participation in or be denied the benefits of the services, programs, or activities of a public entity,

or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. State prisons are

deemed "public entities" under Title II, *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210, (1998)),

and "the phrase 'service, program, or activity' under Title II ... is 'extremely broad in scope and

includes anything a public entity does,'" *Furgess v. Pa. Dept. of Corr.*, 933 F.3d 285, 289 (3d

Cir. 2019). As such, "a prison's refusal to accommodate inmates' disabilities in such

fundamentals as mobility, hygiene, medical care, and virtually all other prison programs

constitutes a denial of the benefits of a prison's services, programs, or activities under Title II" of

the ADA. *Brown v. Monsalud*, 2021 WL 4502238, at *3 (M.D. Pa. Sept. 30, 2021) (quoting

*Furgess*, 933 F.3d at 290 (internal quotation and citation omitted)). To establish a violation of

Title II, a plaintiff must demonstrate: (1) that he is a qualified individual; (2) with a disability;

and (3) that he was denied the opportunity to participate in or benefit from the services,

programs, or activities of a public entity, or was otherwise subject to discrimination by that

entity, by reason of his disability. *See Bowers v. National Collegiate Athletic Association*, 475

F.3d 524, 553 c. 32 (3d Cir. 2007).

Before the Court may assess the sufficiency of Macon's pleading, it must address the apparent targets of Macon's ADA claim: Dr. Camacho, Gressel, and Mason.  Macon appears to assert this claim against the Medical Defendants in their individual and official capacities for monetary relief.  Yet, as the Court of Appeals for the Third Circuit recognizes, Title II does not authorize suits against government officers in their individual capacities.  *See e.g., Kokinda v. Pennsylvania Dep't of Corr.*, 779 Fed. Appx. 938, 942 (3d Cir. 2019) (concluding that plaintiff's "claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability") (citations omitted); *Matthews v. Pa. Dep't of Corr.*, 613 Fed. Appx. 163, 169-70 (3d Cir. 2015) (agreeing with the Second and Eighth Circuits that "Title II of the ADA does not provide for suits against state officers in their individual capacities").  And Macon's official capacity claims against the Medical Defendants "runs afoul of the well-established proposition that a private corporation does not become a public entity amenable to suit under Title II of the ADA 'merely because it contracts with a public entity to provide some service.'" *Happel v. Bishop*, 2024 WL 1508561, at *5 (W.D. Pa. Feb. 22, 2024) (quoting *Matthews v. Pennsylvania Department of Corrections*, 613 Fed. Appx. 163, 170 (3d Cir. 2015) (citation omitted)), *report and recommendation adopted*, 2024 WL 1003902 (W.D. Pa. Mar. 8, 2024).  *See also Keifer v. PrimeCare Medical, Inc.*, 2017 WL 3142279, at *3 (E.D. Pa. July 24, 2017) (dismissing ADA claim against health care provider after finding "no basis for concluding that ... a private entity contracting to provide health care services to a number of prisons, including Lancaster County Prison in the Commonwealth of Pennsylvania, is an instrumentality of the state or otherwise a public entity.").  Accordingly, the facts alleged do not support the Medical Defendants' liability for violating Macon's rights under Title II of the ADA.

Although far from clear, Macon may also be asserting the ADA claim against Carter in his official capacity for monetary relief. In contrast to the Medical Defendants, because Carter is an agent of the DOC, Macon can sue him for damages in his official capacity for purposes of the ADA. *See Durham v. Kelley*, 2023 WL 6108591, at *2 (3d Cir. Sept. 19, 2023) ("[S]tate officers can be sued for damages in their official capacities for purposes of the ADA … unless barred by the Eleventh Amendment."). Such a claim is, in effect, a claim against the governmental entity that Carter represents–the DOC. *See id.*; *Miller v. Little*, 2023 WL 3674336, at *8 (E.D. Pa. May 25, 2023) (holding that "[b]ecause ADA claims asserted against individual prison officials named in their official capacities are really claims against the DOC, all ADA claims asserted against the individually-named DOC Defendants [should be dismissed] as duplicative of the claim against the DOC") (citing *Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002)). *See also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 n.55 (1978) ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent…"). Liberally construing the Complaint as asserting such a claim against Carter is, nevertheless, unavailing because of the deficient pleading.

The Complaint's detailed discussion of Macon's mental health needs adequately supports his status as a qualified individual with a disability at this juncture. *See e.g.*, *Happel*, 2024 WL 1508561, at *5 (quoting 42 U.S.C. § 12102) (The ADA defines "disability" as a "physical or mental impairment that substantially limits one or more major life activities."); *Snider v. Pennsylvania DOC*, 505 F. Supp. 3d 360, 408 (M.D. Pa. 2020) (quoting 29 C.F.R. § 1630.2(j)(3)(iii)) (Plaintiff's mental health illnesses "'substantially limit brain function' for purpose of the definition of disability under the Disabilities Act."). Macon cannot, however, satisfy the final element—whether he was "otherwise qualified for participation in the program or

28

activity, or for the position sought; [and that] he was excluded from the position sought, denied

the benefits of, or subject to discrimination under the program or activity solely by reason of his

or her [disability]." *Schiavone v. Luzerne Cnty.*, No. 3:21-CV-01686, 2022 WL 3142615, at *8

(M.D. Pa. Aug. 5, 2022) (citation omitted).

Macon's issue with the Medical Defendants' refusal to prescribe him medication and a Z

Code provides the only plausible basis for his ADA claim. *See* ECF No. 37, at 6-7 (Macon's

response to Medical Defendants' ADA claim argument buttresses this position). Because access

to prescription medications "is part of a prison's medical services," courts within this Circuit

have found "claims alleging denial of access to prescription medications" to be actionable under

the ADA. *Happel*, 2024 WL 1508561, at *6 (quoting *McPherson v. Cnty. of Dauphin*, 2020 WL

1558206, at *3 (M.D. Pa. Mar. 24, 2020) (collecting cases)). By contrast, decisions "regarding

the diagnosis and treatment" of a disease are not. *Id.* (quoting *Kiman v. New Hampshire Dept. of

Corr.*, 451 F.3d 274, 286-87 (3d Cir. 2006) ("[U]nlike decisions 'regarding the diagnosis and

treatment' of a disease, access to prescription medications 'is part of a prison's medical services

and thus is one of the "services, programs, or activities" covered by the ADA.'"). This is

because "the ADA does not create a federal cause of action for prisoners challenging the medical

treatment provided for their underlying disabilities." *Hubbard v. Taylor*, 452 F. Supp. 2d 533,

544 (D. Del. 2006), *aff'd*, 538 F.3d 229 (3d Cir. 2008). *See also Schiavone*, 2022 WL 3142615,

at * 7 (citing *Kokinda*, 663 Fed. Appx. at 159) ("The Third Circuit has ruled that allegations of

inadequate medical treatment are distinct from disability-based discrimination under the ADA.").

Macon's allegation that Medical Defendants provided him inadequate mental health care because

of their reluctance to treat his mental health needs with medication and a Z Code falls squarely

within the latter category of "diagnosis and treatment." *See also* ECF No. 37, at 7 ("The Plaintiff

needed medication and other treatment to try and put his episodic behavior in remission."). As

such, he cannot maintain an ADA claim based on the facts set forth in the Complaint.

Accordingly, this claim will be dismissed without prejudice.

### E. The facts alleged are insufficient to state a Fourteenth Amendment access-to-courts claim.

Macon contends that his constitutional right to access the courts was denied because

Security did not retain unspecified video footage. "Under the First and Fourteenth Amendments,

prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir.

2008). "Where prisoners assert that defendants' actions have inhibited their opportunity to

present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost

a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no

other 'remedy that may be awarded as recompense' for the lost claim other than in the present

denial of access suit." *Id*. (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). "[T]he

underlying cause of action, ... is an element that must be described in the complaint."

*Christopher*, 536 U.S. at 415.

Macon's claim fails because the facts alleged do not support that the loss of evidence has

rendered him unable to pursue a meritorious claim in this case.[8]  Indeed, Macon is actively

pursuing his claims in this very action. An access to courts claim assumes the prior loss of a

meritorious claim, not alleged impairment of one that the plaintiff is actively pursuing. *See*

*Green v. Ferdarko*, 2017 WL 9285187, at *12 (W.D. Pa. Dec. 6, 2017), *report and*

*recommendation adopted*, 2018 WL 2009087 (W.D. Pa. Apr. 30, 2018); *See v. Fink*, 2009 WL

648936, at *4.

---

[8] Even if Macon stated a viable access-to-courts claim, he has not demonstrated that any Defendant was personally involved in the underlying unconstitutional conduct. *See* Part V.2, *supra*.

What Macon is really complaining about is potential spoliation of evidence, which, if established, the Court can address at an appropriate time through an adverse inference charge or other action. *See Green*, 2017 WL 9285187, at *12. But such alleged spoliation cannot support an independent access to courts claim in a lawsuit where Macon is prosecuting the very claim that he asserts was lost or damaged. *See id.* Because Macon cannot allege facts to support an injury cognizable in an access to courts case, this claim will be dismissed with prejudice.

### F.  The facts alleged are insufficient to support a state law claim against any Defendant.

#### 1.  The medical malpractice/professional negligence claim will be dismissed without prejudice for failure to file a certificate of merit.

Macon next avers that Medical Defendants' conduct constituted "medical malpractice and negligence." ECF No. 5, p. 4. Medical Defendants contend that this claim is a medical malpractice claim that must be dismissed because Macon has failed to file a Certificate of Merit. ECF Nos. 25, p. 10. The Court agrees.

Macon's negligence/medical malpractice claim appears premised upon his contention that he received "[i]nadequate [p]rison [m]edical [c]are." ECF No. 5, p. 4. This claim thus hinges upon an alleged breach of a medical standard of care. Macon must therefore establish that

> (1) the [medical professional] owed a duty to the patient; (2) the [medical professional] breached the duty; (3) the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the patient; and (4) the damages suffered by the patient were a direct result of that harm."

*Id.* (quoting *Doe v. Hosp. of Univ. of Pa.*, 546 F. Supp. 3d 336 (E.D. Pa. 2021)).

Rule 1042.3 of the Pennsylvania Rules of Civil Procedure requires a plaintiff in a medical malpractice claim to file a Certificate of Merit with the complaint, or within 60 days after the

filing thereof, attesting that there is a reasonable probability that the medical care described in

the complaint fell outside of acceptable professional standards.  The Third Circuit has held that

Rule 1042.3 is substantive law that must be applied by federal courts under *Erie R.R. v.*

*Thompkins*, 304 U.S. 64 (1983).  *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262-

64 (3d Cir. 2011).  Thus, for purposes of a motion to dismiss, the Pennsylvania Certificate of

Merit rule is applied as "controlling, substantive state law."  *Scaramuzza v. Sciolla*, 345 F. Supp.

2d 508, 509-10 (E.D. Pa. 2004).

"[A] plaintiff's failure to comply with Rule 1042.3 requires dismissal of any malpractice

claim."  *Bennett v. PrimeCare Medical*, Inc., 2018 WL 6072126, at *10 (M.D. Pa. Sept. 14,

2018).  However, "Pennsylvania practice expressly provides plaintiffs with notice of Rule

1042.3's requirements and an opportunity to cure any failure to file a certificate of merit before a

matter is dismissed." *TranSystems Corp. v. Hughes Associates, Inc.*, 2014 WL 6674421, at *5

(M.D. Pa. Nov. 24, 2014).  Under Pennsylvania Rule 1042.6:

> (a) ... a defendant seeking to enter a judgment of non pros under
> Rule 1042.7(a) shall file a written notice of intention to file the
> praecipe and serve it on the party's attorney of record or on the
> party if unrepresented, no sooner than the thirty-first day after the
> filing of the complaint.

Pa. R. Civ. P. 1042.6(a).  No judgment can be entered against a plaintiff for failure to timely file

a Certificate of Merit until the defendant has complied with the notice requirements of Rule

1042.6(a).  Pa. R. Civ. P. 1042.7(a)(4); *Schmigel v. Uchal*, 800 F.3d 113, 124 (3d Cir. 2015)

("The condition of thirty days' notice prior to seeking dismissal of an action for failure to comply

with the [Certificate of Merit] regime is substantive and must be applied in federal court.").

Here, Medical Defendants provided Macon with the requisite notice on February 26,

2024.  ECF No. 24.  While the Court recognizes how difficult it may be for an inmate to obtain a

COM, this difficulty does not permit the Court to excuse an inmate's failure to file one. Despite the Medical Defendants having provided notice of their intent to seek dismissal of his medical malpractice/professional negligence claim, Macon has not filed the required certificate as to any Defendant. His medical malpractice/professional negligence claim must, therefore, be dismissed. *Bennett*, 2018 WL 6072126, at *10.[9]

### 2    The IIED and NIED claims fail as a matter of law.

Macon asserts that Defendants' conduct caused him intentional and negligent infliction of emotion distress pursuant to Pennsylvania tort law. To state and sustain a claim for IIED, Macon must allege and show that defendants conduct was "(1) extreme and outrageous (2) intentional or reckless, and (3) caused severe emotional distress." *Shumate v. Twin Tier Hosp., LLC*, 655 F. Supp. 2d 521, 541 (M.D. Pa. 2009) (citing *Livingston v. Borough of Edgewood*, 2008 WL 5101478 at *6 (W.D.Pa.2008) (citing *Hargraves v. City of Philadelphia*, 2007 WL 1276937 (E.D.Pa. April 26, 2007)).[10] Pennsylvania courts have defined "extreme and outrageous conduct" as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Id.* (quoting *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745, 754 (1998) (citing *Buczek v. First Nat'l Bank of Mifflintown*, 366 Pa. Super. 551, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)).

---

[9] Carter is also correct that he is immune from the IIED claim under the Eleventh Amendment.

[10] This Court previously explained that

> the Pennsylvania Supreme Court has not expressly recognized a cause of action for IIED. *Taylor*, 754 A.2d at 652. The court has, however, cited RESTATEMENT (SECOND) OF TORTS § 46 "as setting forth the minimum elements necessary to sustain ... [an IIED] action." *Id.* (citing *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988, 991 (1987), and *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745, 754 (1998)) (indicating that if the court were to recognize a cause of action for IIED " '[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society' ") (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 366 Pa.Super. 551, 531 A.2d 1122, 1125 (1987).

*Wilson v. Am. Gen. Fin. Inc.*, 807 F. Supp. 2d 291, 301 (W.D. Pa. 2011).

The Complaint is devoid of facts indicating that any Defendant engaged in "extreme and outrageous" conduct. Accordingly, the Complaint fails to state an IIED against any Defendant as a matter of law.

The NEID claim fares no better. Under Pennsylvania law, a negligent infliction of emotional distress claim is cognizable in four scenarios: "(1) the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger and reasonably feared impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative." *Cohen v. Johnson & Johnson*, 634 F. Supp. 3d 216, 240 (W.D. Pa. 2022) (quoting *Runner v. C.R. Bard*, 108 F. Supp. 3d 261, 272 (E.D. Pa. 2015)). "A plaintiff must also establish the elements of a negligence claim, i.e., that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage." *Id.* (quoting *Wilder v. United States*, 230 F. Supp. 2d 648, 654 (E.D. Pa. 2002)). The allegations in the Complaint fail to establish the elements of a negligence claim as to any Defendant or indicate that Macon experienced one of the four scenarios required for an NIED claim. Accordingly, the Court dismisses the IIED and NIED claims.

Carter also argues that the NIED and IIED claims against him are barred by sovereign immunity. The doctrine of sovereign immunity provides state officials with broad immunity from most state-law tort claims, "except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S. § 2310. Although the Pennsylvania General Assembly "has waived sovereign immunity for claims of negligence against Commonwealth employees in a very limited and express set of circumstances," it has not done so for intentional torts. *Id.* (citing 42

34

Pa.C.S. § 8522(b)).[11]   *Kull v. Guisse*, 81 A.3d 148, 157 (Pa. Comm. Ct. 2013) ("[S]tate
employees do not lose their immunity for intentional torts, provided they are acting within the
scope of their employment.") (citations omitted, emphasis added).   Consequently, sovereign
immunity "shields Commonwealth employees from liability when their actions: (1) cannot fit
into one of the nine statutory exceptions in § 8522; (2) are not negligent; and (3) occurred when
acting within the scope of his or her employment." *Tibbens v. Snyder*, 2020 WL 5372097, at *5
(M.D. Pa. June 24, 2020) (citing *Kintzel v. Kleeman*, 965 F.Supp.2d 601, 606 (M.D. Pa. 2013)).

      The IIED and negligence claims asserted against Carter do not fall within the statutory
exceptions enumerated in § 8522 and no plausible basis exists for inferring that Carter was acting
outside of the scope of his employment.   Accordingly, these claims against Carter are both
facially deficient and barred by sovereign immunity.

### G.   Leave to Amend

      The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure
to state a claim, the Court should permit a curative amendment unless an amendment would be
inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).   The
Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on
the part of the movant, repeated failure to cure deficiencies by amendments previously allowed,
undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of
the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).   And though "the grant or denial
of an opportunity to amend is within the discretion of the District Court," it may not "outright
refus[e] to grant the leave without any justifying reason appearing for the denial." *Id.*   These

---

[11] Specifically, the General Assembly has waived immunity in cases of: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa. C.S.A. § 8522.

instructions are equally applicable to *pro se* litigants and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

In this case, it would be futile to allow Macon to amend the § 1983 official capacity claims, Fourteenth Amendment access to court claim, official capacity ADA claim, and state law claims against Carter. The Court therefore dismisses these claims with prejudice. Macon also cannot cure the deficiency of his ADA claim against the Medical Defendants, and so this claim is also dismissed with prejudice. However, Macon may be able to cure many of the Complaint's deficiencies to sufficiently assert the remaining claims. Accordingly, the Court dismisses these claims *without* prejudice and will grant Macon leave to amend the Complaint within twenty days. If Macon fails to file an amended complaint within this time, the Court will enter an order dismissing with prejudice all claims against the Defendants.[12]

## VI.    Conclusion

For the foregoing reasons, Carter's motion to dismiss the Complaint (ECF No. 19) and the Medical Defendants' motion to dismiss the Complaint (ECF No. 24) will be GRANTED. Mason's official capacity claims for money damages under § 1983, Fourteenth Amendment access to court claim, and state law claims against Carter are dismissed with prejudice. Macon's individual capacity claims under § 1983, official capacity ADA claim, and his state law claims against the Medical Defendants are dismissed without prejudice with leave granted to Macon to file an amended complaint within twenty days. If Macon fails to file an amended complaint

---

[12] Macon is advised that an amended complaint must be complete in all respects and takes the place of the original complaint. As such, the amended complaint must again identify each party and allege the "claims in short, concise, and plain statements." Fed R. Civ. P. 8. Further, he must re-assert in the amended complaint every cause of action from the complaint deemed adequately pled or dismissed *without* prejudiced. *Palakovic v. Wetzel*, 854 F.3d 209, 220 (3d Cir. 2017) ("an amended pleading . . . supersedes the earlier pleading and renders the original pleading a nullity"). Plaintiff must also re-submit any exhibits he attached to his complaint that he wishes to be considered in conjunction with his amended complaint.

within this time, the Court will enter an order dismissing with prejudice Macon's individual

capacity claims under § 1983, official capacity ADA claim, and his state law claims against the

Medical Defendants.   A separate order follows.

DATED this 22nd day of July, 2024.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE